**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

DIKE CHUDI (A-No. 235-576-721),

Petitioner,

v.

CHRISTOPHER CHESTNUT,

Respondent.

No. 1:26-cv-07980-JLT-CDB

ORDER DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS; AND DISMISSING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT

(Docs. 1, 2)

## I. INTRODUCTION

Dike Chudi is a federal immigration detainee proceeding pro se with a motion for temporary restraining order and habeas petition pursuant to 28 U.S.C. § 2241. (Docs. 1, 2.) The government filed a response to the TRO and the underlying petition, asserting that Petitioner is lawfully detained under 8 U.S.C. § 1226(a). (Doc. 7.) For the reasons set forth below, the Court **DISMISSES** the petition for writ of habeas corpus without prejudice.[1]

## II. BACKGROUND

Petitioner is from Nigeria. (Doc. 7 at 10.) Petitioner was admitted into the United States

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing, and whether the parties sought additional briefing on the habeas petition. (Doc. 5.) Petitioner and Respondents do not request a hearing or further briefing. (Doc. 7 at 1; Doc. 11.) Thus, the Court decides the case on the underlying habeas petition on the present record.

on August 2, 2023, pursuant to a B2 nonimmigrant visa, with authorization to remain in the United States for a temporary period not to exceed February 1, 2024. (*See id*. at 6, 11; Doc. 2 at 9.) It appears that authorization period was later extended until July 17, 2025. (Doc. 7 at 11.) Petitioner did not leave the United States by that date as required. (*See* Doc. 2 at 9.) On December 2024, Petitioner married a U.S. Citizen with whom he later had a child. (*Id*.) On February 2025, Petitioner filed an I-130 petition for alien relative. (Doc. 2 at 9.) According to Petitioner, USCIS later dismissed his petition, and DHS subsequently placed him in removal proceedings. (*Id*.) On March 16, 2026, DHS issued a Notice to Appear charging Petitioner as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act, codified in 8 U.S.C. § 1227(a)(1)(B). (Doc. 7 at 6.) Petitioner's removal proceedings remain ongoing, with his next calendar hearing scheduled for April 2027.[2] (*See id*; Doc. 2 at 9.)

On August 11, 2026, Petitioner was arrested by local police for attempting to purchase a firearm for his role as a security officer. (Doc. 7 at 11.) Apart from Petitioner's recent encounter with law enforcement, Petitioner has no criminal history. (*Id*. at 11, 15–16; Doc. 2 at 9.) According to the I-213, Petitioner was declined the purchase due to his stated residence status. (Doc. 7 at 11.) The store clerk subsequently contacted Homeland Security Investigations who arrived on scene. (*Id*.) HSI officers interviewed the Petitioner and determined that he was a citizen of Nigeria unlawfully present in the United States after overstaying his nonimmigrant visa. (*Id*.) HSI officers arrested the Petitioner and later transferred him to the California City Detention Facility, where he remains. (*Id*.; *see also* Doc. 2 at 1.) DHS issued an I-200 administrative warrant for Petitioner's arrest. (Doc. 9 at 4.) Although it does not appear that an I-286 notice of custody determination was issued at the time of Petitioner's arrest, DHS nonetheless provided Petitioner with a bond redetermination hearing before an immigration judge pursuant to 8 C.F.R. § 1236.1(d)(1). (*See id*. at 1, 6.) That bond hearing occurred on October 13, 2026. (*See id*. at 6; Doc. 10 at 1.) The IJ ultimately denied release on bond finding that, although Petitioner did *not* present a danger to the community, he nonetheless presented a

---

[2] *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited November 5, 2026).

flight risk. (*See* Doc. 10, Digital Audio Recording "DAR".)

On September 28, 2026, Petitioner filed a TRO and petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that his due process rights have been violated. (*See* Docs 1, 2.) On October 6, 2026, Respondents filed an answer to the petition, arguing that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(a) and is entitled to a bond redetermination hearing before an IJ, (Doc. 7 at 3–4), which he has now received. (*See* Doc. 9 at 1, 6; Doc. 10.) On October 26, 2026, Petitioner filed a reply challenging his bond hearing as unconstitutional, requesting the court to waive the exhaustion requirement, and arguing that his arrest pursuant to § 1226(a) was unconstitutional because he was arrested without a warrant, notice, or a pre-deprivation hearing. (Doc. 11 at 2–3.)

## III. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

To the extent Petitioner's habeas petition seeks to challenge the immigration judge's bond decision, (*see* Doc. 11 at 2), he has not exhausted his administrative remedies. 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2)

relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quotation marks and citations omitted).

Here, the *Puga* factors weigh in favor of requiring Petitioner to exhaust his administrative remedies. First, the BIA is the subject-matter expert for appeals of custody redetermination and bond decisions. Accordingly, BIA's consideration of the IJ's decision—specifically the IJ's flight risk finding—is necessary to generate a proper record and reach a proper decision. Second, waiving exhaustion in this instance would encourage others to deliberately bypass the established administrative scheme, which contemplates appeals with the BIA, not the district court, in the first instance. Third, the outcome of such appeal may provide Petitioner with the relief sought in this proceeding and eliminate the need for judicial review.

Moreover, nothing in the record suggests that exhaustion should be excused in this case. Though Petitioner argues that the lengthy waiting period for a BIA decision on a bond appeal would result in irreparable injury (*see* Doc. 11 at 2), the Court nonetheless finds that Petitioner "has not otherwise demonstrated that an appeal to the BIA will be 'inadequate or unavailing' . . . due to some 'case-specific barrier to obtaining meaningful review.'" *Betanzos Espinosa v. Mattos, et al.*, No. 2:26-cv-01902-APG-EJY, 2026 WL 3205078, at *2 (D. Nev. Oct. 23, 2026); *see also Pedro M.T.M. v. Chestnut, et al.*, No. 1:26-cv-06281-MWJS, 2026 WL 2524292, at *2 (E.D. Cal. Aug. 26, 2026). Accordingly, the Court **DENIES** Petitioner's challenge to his bond determination on exhaustion grounds.

However, Petitioner's claims challenging the constitutionality of his initial detention under 8 U.S.C. § 1226(a) may be reviewed by this Court. *See Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (waiver of exhaustion requirement proper where the petitioner raised a purely legal challenge). As such, the Court turns to Petitioner's claim that his initial detention violated 8 U.S.C. § 1226(a) because DHS failed to comply with the warrant requirement and did not provide a pre-deprivation notice or hearing. (*See* Doc. 1 at 10; Doc. 2 at 10; Doc. 11 at 3.)

**B. Due Process**

1. <u>Section 1226(a) Warrant and Custody Determination Requirements</u>

Petitioner argues that his detention is unlawful under 8 U.S.C. § 1226(a) because DHS failed to issue a warrant at the time of his arrest. (Doc. 1 at 10; Doc. 2 at 10.) The plain language of § 1226(a) provides that a noncitizen may only be arrested and detained "on a warrant issued by the Attorney General ... pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a).") The Immigration and Nationality Act's implementing regulations further provide: "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the [noncitizen] may be arrested and taken into custody under the authority of a Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1) (emphasis added). Additionally, under 8 C.F.R. § 287.3(d), absent extraordinary circumstances, DHS shall engage in an initial custody determination and a decision to issue a Warrant and Notice to Appear within 48 hours of the arrest. 8 C.F.R. § 287.3(d).

Here, the government somewhat complied with these statutory and regulatory requirements. DHS issued and served an I-200 administrative warrant on August 11, 2026, the day of Petitioner's arrest. (Doc. 7 at 11; Doc. 9 at 4.) Though it appears that DHS failed to issue an I-286 notice of custody determination within 48 hours of Petitioner's arrest, (*see* Doc. 9 at 1), such deficiency is harmless, whereas here, Petitioner requested and received a custody

redetermination hearing before an Immigration Judge, which is the normal next step in the process of an initial custody determination. (*See* Doc. 9 at 6; Doc. 10); 8 C.F.R. § 1236.1(d)(1) ("After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter."). Furthermore, Petitioner has not shown that the government's violation of 8 C.F.R. § 287.3(d) in failing to issue an I-286 notice within 48 hours of Petitioner's arrest warrants immediate release as the appropriate remedy in his case. *See Nguema Alene v. Warden of the California City Detention Facility, et al.*, No. 1:26-cv-7355-JLT-FJS, 2026 WL 3082895, at *3 (E.D. Cal. Oct. 15, 2026) ("Even assuming, that the government failed to comply with the statutory or regulatory requirements governing the initiation of Petitioner's custody, Petitioner has not shown that release from custody is an appropriate remedy.")

2. Habeas Remedy in the Context of a Visa Overstay

The parties do not dispute that Petitioner is detained under 8 U.S.C. § 1226(a) following his arrest and detention. However, Petitioner argues that he is entitled to immediate release because he was arrested without a pre-deprivation notice and hearing under § 1226(a) (*See* Doc. 1 at 10.) But Petitioner is not entitled to such remedy. Time and again, this Court has found that where a petitioner overstays their nonimmigrant visa and is later detained by DHS as removable under 8 U.S.C. § 1227(a)(1)(B), (*see* Doc. 7 at 6), they are entitled only to the relief afforded by applicable regulations. *See e.g., Stela Rocha v. Mullin, et al.*, No. 1:26-cv-06962-JLT-EPG, 2026 WL 3319523, at *1, 2–3 (E.D. Cal. Nov. 3, 2026) (ordering only a custody redetermination hearing under 8 C.F.R. § 1236.1(d)(1) for a petitioner who had overstayed her nonimmigrant B2 visa without authorization and was subsequently arrested by DHS); *Ramirez Marquez v. Warden, et al.*, No. 1:26-cv-04528-JLT-SAB, 2026 WL 2268762, at *2–3 (E.D. Cal. Aug. 6, 2026) (same). Notably, Petitioner was not previously assessed for flight risk or danger upon

entry into the United States because he entered through a B2 nonimmigrant visa. *Cf. J.S.H.M. v. Wofford, et al.*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, at *1, 15–16 (E.D. Cal. Oct. 16, 2025) (explaining that petitioner's release on parole into the interior of the country necessarily meant that DHS concluded he was not a flight risk or danger and that courts typically order immediate release when DHS fails to provide a pre-deprivation hearing prior to arrest, unless there is some change in circumstance that warrants a post-deprivation hearing).

In sum, because Petitioner already received the process to which he was entitled under 8 U.S.C. § 1226(a)—namely, a custody redetermination hearing before an IJ pursuant to 8 C.F.R. § 1236.1(d)(1)—the Court finds that his detention is constitutional. (*See* Doc. 10, Digital Audio Recording "DAR".) For the foregoing reasons, the Court **ORDERS**:

1. The petition for writ of habeas corpus (Doc. 1) is **DISMISSED** without prejudice.
2. The motion for temporary restraining order (Doc. 2) is **DISMISSED** as **MOOT**.
3. The Clerk of Court is directed to serve the California City Detention Facility in California City, California with a copy of this order.
4. The Clerk of Court is directed to enter judgment for Respondents and close this case.

IT IS SO ORDERED.

Dated: November 5, 2026

UNITED STATES DISTRICT JUDGE